THE PEOPLE ex rel. THE ERIE AND GENESEE VALLEY RAILROAD COMPANY, Respondents, v. J. NELSON TUBBS et al., Commissioners, etc., Appellants.

Where commissioners are appointed under the provisions of section 22 of the general railroad law (chap. 140, Laws of 1850), their power over the proposed route is not restricted to that part of it which lies within the bounds of the land of the party procuring their appointment, but they may make any alteration of the proposed route within the county which, may be necessary to obviate such objections of the party aggrieved as they may deem well founded; and in exercising their power to alter the proposed route, it is the duty of the commissioners to complete the alteration so as to preserve the continuity of the line; they have no power to so change a portion of the proposed route as to leave it disconnected at either end with the other portions, and thus to abridge or interrupt the road.

The statute contemplates but one board of commissioners in a county, and all alterations to be made in the proposed route in such county should be made by that board; it should, therefore, complete its work by either affirming the route proposed by the company, or making all necessary alterations; and when this is done the route through the county is established.

(Argued February 16, 1872; decided May 21, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, reversing the order and determination of defendants as commissioners appointed pursuant to the provisions of the general railroad act, to examine the proposed route of the Erie and Genesee Valley Railroad Company in the county of Livingston, which order was brought up for review upon certiorari. (Reported below, 59 Barb., 401.)

Defendants were duly appointed commissioners under the twenty-second section of the general railroad act (chap. 140, Laws of 1850), upon the petitions of George Hartman and William Hartman, alleging that the proposed route needlessly injured their lands. The commissioners made the following order:

"Now, therefore, by the authority vested in us by law, we hereby direct and determine that the location of said road

1872.] People ex rel. E. & G. V. R. R. Co. v. Tubbs et al. 357

Statement of case.

through the premises of the said William Hartman and George Hartman shall be changed from the route as laid down on the map of the said company on file in the clerk's office of Livingston county, to a line described as follows, to wit: The center line of the said road through the premises of the said William and George Hartman shall be laid in and correspond with a straight line joining the point of intersection of the center line of the Erie and Genesee Valley railroad (as located on their map on file) with the center line of highway running east and west and known as the Zerfass road (said point of intersection being marked ' A ' on the accompanying map) and the point of intersection of the center lines of Jefferson and Ossian streets, in the village of Dansville, said last point of intersection being marked ' B ' on accompanying map." The point last mentioned was some distance from the line of the road.

*Lester B. Faulkner* for the appellants. The writ should have been dismissed. (*People* v. *Highway Commissioners, etc.*, 30 N. Y., 72; *People* v. *The Mayor, etc.*, 2 Hill, 9.) None of the matters returned under the unauthorized portion of the writ were properly before the court at General Term. (*People* v. *Highway Commissioners*, 30 N. Y., 72; *People ex rel. Woodward* v. *Covert*, 1 Hill, 674; *People ex rel. Robinson* v. *Ferris*, 36 N. Y., 218.) It is only by certiorari directed to the justice, or by the direct proceeding by appeal for that purpose, that the regularity of the appointment of the appellants as commissioners can be examined. (*People* v. *Stryker*, 24 Barb., 650; 1 Hill, 674, *supra; People* v. *Stevens*, 5 Hill, 616; *People* v. *Hopson*, 1 Denio, 575; *Greenleaf* v. *Low*, 4 id., 168; *Weeks* v. *Ellis et al.*, 2 Barb., 320; *Sheldon* v. *Wright*, 1 Seld., 497.) The office of the writ is to relieve only from errors stated. (*Monro* v. *Baker*, 6 Cow., 396; *People* v. *City of Rochester*, 21 Barb., 656; *Ex parte Mayor of Albany*, 23 Wend., 277.) The relator will be confined to the grounds of complaint stated. (21 Barb., 657, *supra;* 24 id., 640.) He can raise no questions that were

not raised before the commissioners, except jurisdiction. (*People* v. *Carrington*, 2 Lansing, 368; 21 Barb., 657.) The facts will be examined only to enable the court to see whether the inferior tribunal has exceeded its powers. (*People* v. *Board of Assessors*, 39 N. Y., 81; *Hyatt* v. *Bates*, 1 Hand, 166.) The court is not bound to follow strict grammatical construction in construing the order. (5 Abb. Digest, 381, §§ 236, 240.) Upon the principles of construction applicable to statutes the determination may be held to locate the whole route. (*Fidler* v. *Cooper*, 19 Wend., 288; 1 Abb. Dig., 209.) Every reasonable intendment will be made to uphold the determination. (*People* v. *The County Court of Jefferson County*, 56 Barb., 145; *Ott* v. *Schrœppel*, 1 Seld., 482; *Jackson, etc.,* v. *Ambler*, 14 Johns. R., 96; *Bacon et al.* v. *Wilber*, 1 Cow., 117; *Mead* v. *Burns*, 32 N. Y., 275.) The route laid down will stand if it can be reduced to certainty. (*Jackson* v. *Ambler*, 14 J., 96.) If the company can make it certain it should stand. (14 J., 96; Laws 1850, chap. 140, § 20.) The relator cannot complain of what it did not request. (1 Seld., 482; 14 J., 96.) The petitioner is not bound to watch over the action of the commissioners upon other lands, in order to uphold the line upon his own. (*Clark* v. *Phelps et al.*, 4 Cow., 190.) The commissioners had implied power to do whatever was necessary to effect the object. (*Stief* v. *Hunt*, 1 N. Y., 20; *Livingston* v. *Harris*, 14 Wend., 329.) The commissioners had power to alter the line on other lands than the petitioners. (*In re L. I. R. R. Co.*, Court of Appeals, 1870.)

*John A. Van Derlip* for the respondents.

RAPALLO, J. By the 22d section of the general railroad law, every company formed thereunder is required, before constructing its road through any county, to file in the clerk's office a map of the route intended to be adopted in such county, and to give written notice of the route so designated to all actual occupants of the land over which it is to pass.

Any person feeling aggrieved by the proposed location may, within fifteen days after receiving such notice, apply for the appointment of commissioners. If appointed it becomes their duty to examine the proposed route, and to affirm or alter it, as may be consistent with the just rights of all parties and the public. There is nothing in the statute which restricts the power of the commissioners over the proposed route to that part of it which lies within the bounds of the land of the party procuring their appointment. The effect of such a restriction would, except in very rare cases, be either to deprive the commissioners of the power to change a location unnecessarily prejudicial to the objecting party, or to compel them, for the purpose of affording such remedy, to make curves which would be a serious injury to the line, and might render it dangerous or impracticable. No change, of any considerable extent, can be made in the line of a railroad at a particular point without involving an alteration of the course to a greater or less distance in each direction; and the legislature has not been guilty of the absurdity of limiting the distance to which such necessary alterations may extend, by the boundaries of the land of the objecting party, or of making his right to relief depend upon the extent of the area of his land. When, upon the application of a person aggrieved by the proposed location, commissioners are appointed, they are required by the statute to examine and affirm or alter, not that part of the line which runs through the premises of the objector, which may be very limited in extent, but *the proposed route.* That clearly refers to the route referred to in the preceding part of the section, and of which a map is required to be filed, viz., "the route intended to be adopted by such company in said county;" and empowers them to make any alteration of such route which may be necessary to obviate such objections of the party aggrieved as they may decide to be well founded. This point was determined in the *Matter of the Long Island Railroad Company* (45 N. Y., 364).

It cannot therefore be objected that, in the present case,

the commissioners have exceeded their jurisdiction by making alterations extending beyond the boundaries of the lands of the petitioners. If duly appointed, they had jurisdiction to affirm or alter the proposed route as might be consistent with the just rights of all parties and the public. Their determination might be, and was, founded upon a personal examination of the route, and of the adjacent property, as well as upon testimony; and if upon knowledge thus acquired they had made an alteration of the proposed route, there would be no means of reviewing their decision upon the merits.

The real question presented on this appeal is whether the adjudication of the commissioners is in fact an alteration of the route. Cutting out and transplanting a portion of the line of the road, and leaving it disconnected at each end from any other portion of the road, would not be such an alteration of the route as is contemplated by the statute. Taken literally, this is what the decision of the commissioners purports to do. It changes the location of the road through the premises of William and George Hartman, from the route laid down on the map, so as to be "laid in and correspond with" a straight line running from the railroad at Zerfass street to the intersection of Jefferson and Ossian streets. It does not, in terms, connect either end of the piece of road so to be laid in and correspond with the straight line described, with the residue of the railroad; nor does it appear whether or not this straight line could be adopted as part of the line of the road. But assuming that the decision can be so interpreted as to embrace in the route of the road, as changed, the whole of this straight line from Zerfass to the intersection of Ossian and Jefferson streets, there the connection ends. The decision does not direct in what manner the road is to be continued beyond Ossian street. It makes the road terminate there. To thus abridge or interrupt the road was clearly beyond the power of the commissioners.

It is argued that the railroad company may themselves lay out and complete the line from the intersection of Jefferson and Ossian streets, so as to connect at some more southerly

point with the residue of the road. But we do not think this an answer to the objection. In exercising the power to alter the proposed route through the county, it was the duty of the commissioners to complete the alteration so as to preserve the continuity of the line, and not merely to point a portion of the road in a particular direction, leaving the company to find their way back to the main line. The commissioners were so to alter the route " as might be consistent with the just rights of all parties and the public;" and for this purpose to examine the route and hear the parties. The whole alteration should be made by the commissioners, and their judgment should be exercised in respect to every part of it. We think that the statute contemplates but one board of commissioners in each county; and that all alterations to be made in the proposed route in such county should be made by that board. There is no provision in the statute looking to the existence of more than one board, or providing for the determination of differences which might arise between several boards. When it should become necessary to alter a line it could hardly be expected that several independent boards would exactly coincide, or harmonize in their action; and if the statute contemplated that several bodies of this description should operate upon the line in the same county, it is reasonable to suppose that provision would have been made for reconciling differences between them. The absence of any such provisions tends strongly to show that the appointment of but one board of commissioners was intended to be authorized. The board so appointed should therefore complete its work, either by affirming the route proposed by the company or making all the necessary alterations; and when this is done, the route through the county is established. Any other construction would lead to endless confusion. In the present case, if the location by the commissioners of the portion of the line described in their decision were held sufficient, and the company should proceed to lay out a new line to connect the piece laid out by the commissioners with the residue of the road, any party deeming himself aggrieved by such new

line might procure the appointment of another board of commissioners, and they might make such alterations as would necessitate a change in the line designated by the first commissioners; and this might happen as often as any board of commissioners should attempt an alteration incomplete in itself, and which the company should be obliged to complete on its own responsibility.

We think, therefore, that the commissioners, if they undertook to make any alteration of the proposed route, should, after having afforded to all occupants of the land to be affected by the alteration an opportunity to be heard, have completed the alteration so as not to break the continuity of the line, or to throw upon the company the responsibility of finishing the work which they, the commissioners, had begun. It was their duty, when causing the line of the road to diverge from the route laid out by the company, to provide a substituted route, consistent with the just rights of all parties and the public, and by which they would be bound. And for the failure of the commissioners thus to complete the performance of the duty imposed upon them by the statute, the judgment of the General Term, reversing their decision, should be affirmed.

All concur, Church, Ch. J., not voting.

Judgment affirmed.